RYAN SUPPLY COMPANY, et al. *v.* BRETT.

No. 39306 October 25, 1954 75 So. 2d 75

November 22, 1954 75 So. 2d 721

*Snow & Covington,* Meridian, for appellants.

*H. C. Watkins,* Meridian, for appellee.

KYLE, J.

This case is before us on appeal by the employer and its insurance carrier from a judgment of the Circuit Court of Lauderdale County awarding compensation to the claimant for a hernia injury alleged to have been sustained by the appellee on February 24, 1952.

The appellee worked for Ryan Supply Company as a foreman and automotive machinist. On February 24, 1952, the appellee was engaged in repairing a large Mack engine, and after lining the ram from the main bearings of the engine, the appellee and a helper, John Holcomb, lifted the engine, which weighed approximately 400 pounds, from a table and placed it on a pickup truck. The appellee, while lifting the heavy motor, felt a severe pain in his left groin. A large knot or protrusion appeared in the groin immediately, and the injury was accompanied by severe pain.

The accident occurred on Sunday. The appellee went to his home immediately. On Monday morning he notified Bert Ryan, the store manager, of his injury, and at Ryan's suggestion he consulted a physician. The doctor examined him the same day and told him that he had a severe hernia; and the doctor advised an immediate surgical operation. The operation was performed two or three days later. The appellee remained in the hospital eight days and was confined to his home eleven more days. He was totally disabled for a period of 21 days.

The appellee testified that, while he was working for the same employer in July 1951, his foot slipped on a greasy floor while he was lifting a motor, and he felt a slight burning sensation in his left groin. The burning sensation continued for a period of three or four days. A little knot appeared in his left groin from time to time thereafter, ''something about the size of the end of the second finger.'' The knot developed at the place where he had felt the first burning sensation. ''If I strained or got in an awkward position, I would notice this little knot there.'' The appellant made no report to his employer concerning the burning sensation that he had experienced in July or the little knot that developed later. He had no medical examination made of the affected part, until after the rupture occurred on February 24.

Dr. Mayo Flynt, who examined the appellee on February 25, 1952, testified that the appellee at that time was suffering from a large left inguinal hernia. The doctor stated that the surgical operation performed a few days later was successful. The doctor also stated that the appellee told him at that time that he had lifted a motor back in July of 1951, ''at which time he had felt a burning sensation and pain there which gradually developed an enlargement in that region,'' and that, ''as he went along this thing gradually got a little larger.''

The attorney-referee found that the evidence was insufficient to prove that the appellee had sustained a compensable injury under Section 8, subdivision (f) of the Mississippi Workmen's Compensation Act of 1948, as amended; and the attorney-referee denied compensation. The commission affirmed the order of the attorney-referee. On appeal to the circuit court the order of the commission was reversed and judgment was entered in favor of the appellee awarding compensation in the sum of $25 per week for a period of three weeks for temporary total disability, and the sum of $25 per week for a period of four weeks for partial disability,

and authorizing the recovery of all medical and hospital expenses incident to the injury.

The appellants argue only one point as ground for reversal on this appeal, and that is that the court erred in reversing the order of the Commission and in awarding compensation to the claimant for the hernia injury under the facts stated above.

Section 8, subdivision (f), of Chapter 354, Laws of 1948, as amended by Section 6 of Chapter 412, Laws of 1950, Section 6998-12, Code of 1942, provides as follows:

"In all cases of claim for hernia, it shall be shown by a preponderance of the evidence:

"1. That the descent or protrusion of the hernia or rupture immediately followed as the result of sudden effort, severe strain, or the application of force to the abdominal wall;

"2. That there was severe pain in the region of the hernia or rupture;

"3. That there has been no descent or protrusion of the hernia or rupture prior to the accident for which compensation is claimed;

"4. That the physical distress resulting from the descent or protrusion of the hernia or rupture was noticed immediately by claimant, and communicated to his employer within a reasonable time;

"5. That the physical distress following the descent or protrusion of the hernia or rupture was such as to require the attendance of a licensed physician or surgeon within five (5) days after the injury for which compensation is claimed. Postoperative hernias shall be considered as original hernias."

There is no substantial conflict in the testimony; and it can be readily seen that the proof was sufficient to meet the requirements of paragraphs 1, 2, 4 and 5 of subdivision (f) of the hernia section of the Workmen's Compensation Act. The only point left for us to con-

sider is whether it was shown by a preponderance of the hernia or rupture prior to the accident for which compensation is claimed.

We think that the appellee's proof on this point not only failed to show that there had been no descent or protrusion of the hernia or rupture prior to the accident of February 24, 1952, but the appellee's own testimony shows that there had been a protrusion of the hernia soon after the injury in July 1951, and at frequent intervals thereafter, and that this knot was more noticeable during the last two or three weeks before the severe attack occurred on February 24, 1952.

This Court has held that the Workmen's Compensation Act should be given a liberal interpretation to effect its salutary purposes; and this Court has held in several recent cases that, pre-existing disease or infirmity of the employee does not disqualify a claim under the ''arising-out-of-employment'' requirement of the Act if the employment aggravated, accelerated, or combined with the disease or infirmity to produce the death or disability for which compensation is sought. Ingalls Shipbuilding Corp. et al. v. Byrd, 215 Miss. 235, 60 So. 2d 645; Cowart v. Pearl River Tung Co. et al. (Miss.), 67 So. 2d 356; East v. Pigford Bros. Const. Co. et al. (Miss.), 68 So. 2d 294; Tate v. Dr. Pepper Bottling Co., et al. (Miss.), 70 So. 2d 602; Pearson et al. v. Dixie Electric Power Assn., et al. (Miss.), 70 So. 2d 6; Federated Mut. Implement & Hdw. Ins. Co. v. Spencer (Miss.), 67 So. 2d 878. See also Larson's Workmen's Compensation Law, Vol. 1, Sec. 12.20, p. 170. But in hernia cases the Court must give effect to the above mentioned requirements of the hernia section of the statute.

If the proof in this case had shown that there had been no descent or protrusion of the hernia prior to the accident on February 24, 1952, for which compensation is claimed, the fact that the appellee's physical condition prior to the injury sustained by him on February 24, 1952, may have made him unduly susceptible

to a hernia injury would have furnished no ground for holding that the condition, rather than the accident, was the proximate cause of his injury. But the statute imposes upon the claimant in a case of this kind the burden of proving by a preponderance of the evidence that there had been no descent or protrusion of the hernia or rupture prior to the accident for which compensation is claimed; and the appellee's own testimony shows that he was unable to make such proof.

We think there was no error in the order of the commission disallowing the claim, and that the order of the commission should have been affirmed by the circuit court.

The judgment of the lower court is therefore reversed and the order of the commission is reinstated and affirmed.

Reversed and judgment rendered in favor of the appellants.

*McGehee, C. J.*, and *Hall, Holmes* and *Gillespie, JJ.*, concur.

### ON MOTION FOR A FULL COURT TO CONSIDER SUGGESTION OF ERROR

McGehee, C. J.

On October 25, 1954, a unanimous decision was rendered in the above styled cause by a majority of the members of this Court.

 In increasing the personnel of the Court from six to nine members by a constitutional amendment, for the purpose of enabling the Court to keep the docket reasonably current in the disposition of cases, it was provided that five members of the Court should constitute a quorum for the hearing and disposition of a case. Under our procedure of working in two groups it follows that one of the Judges sitting on a particular day must sit with the other four on the next sitting thereafter. It is deemed expedient that in response to

the above styled motion we should emphasize the fact that neither an appellant nor appellee can either win or lose a case before a five-judge group except by unanimous consent of the judges who compose the same. If it should be found upon the consideration of the suggestion of error filed herein that either of the five Judges who participated in the former decision should be of the opinion that it should be sustained, the result will be that the suggestion of error will then automatically be referred to all nine of the Judges for decision.

Therefore, in keeping with the purpose of the Legislature and the wishes of the people in providing for the increase of the Court from six to nine members so as to keep the docket reasonably current, we can not afford to set a precedent of referring a suggestion of error to the full Court to be passed on unless the members of the group rendering the original decision should get in disagreement as to what disposition should be made of the suggestion of error. If we should adopt any other course it would follow that we would likely be asked to do so in regard to almost every suggestion of error, necessitating the presentation to the entire group the facts and contentions of law in every such case, and to no purpose since the votes of the Judges who originally considered the case, being five in number, would control the decision to be rendered by the entire group of nine, assuming that they would all adhere to their former views. Moreover, if either of the original group should change his mind the suggestion of error would automatically go before the entire group for decision, as aforesaid.

The above styled motion will, therefore, be overruled, the suggestion of error considered by the group who originally participated in the case, and in the event either

38

of them should change his vote the same will then be considered by all of the Judges.

Motion overruled.

*Hall, Kyle, Holmes* and *Gillespie, JJ.,* concur.